**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

BERNICE P. JOHNSON,          :

     Plaintiff,              :

v.                         :       CA 15-00093-CG-C

DIRT CHEAP, LLC, *et al.*,      :

     Defendants.         :

## REPORT AND RECOMMENDATION

This matter is before the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B), on the Plaintiff's Combined Motion to Amend Complaint and Motion to Remand (the "Motion to Amend and Remand") (Doc. 13), the Defendants' Response and Consent to Plaintiff's Combined Motion to Amend Complaint and Motion to Remand (the "Response to the Motion to Amend and Remand") (Doc. 15), the Plaintiff's Reply to the Defendants' Combined Motion to Amend and Motion to Remand (Doc. 18), the Defendants' Motion to Strike (the "Motion to Strike") (Doc. 16), and the Plaintiff's Response to Defendant's Motion to Strike (the "Response to the Motion to Strike") (Doc. 19).   After careful consideration, it is **RECOMMENDED** that the Motion to Strike be **DENIED AS MOOT**, the Motion to Amend and Remand be **GRANTED**, and this matter be **REMANDED** to the Circuit Court of Clarke County, Alabama for the reasons stated herein.

## Background

The Plaintiff filed her Complaint (Doc. 1-1 at 1-13) in the Circuit Court of Clarke County, Alabama (the "Circuit Court") on June 23, 2014, asserting a personal injury action against Dirt Cheap, LLC; Hudson's Dirt Cheap, Inc. (together with "Dirt Cheap,

LLC", the "Defendants"); and several fictitious defendants.  The Plaintiff subsequently amended her complaint (the "First Amended Complaint") (Doc. 1-1 at 14-24) on June 25, 2014 adding a demand for a jury trial.  Specifically, the Plaintiff alleges that on June 25, 2012, she was a customer at a store operated by the Defendants and located in Thomasville, Alabama (the "Thomasville Store").  (Doc. 1-1 at 17).  According to the Plaintiff, while she was in the store, she tripped over the base of an iron stand that was not visible to customers and, as a result, suffered serious personal injuries.  (*Id.*).  The Defendant contends that the Defendants, acting through their agents or employees, allegedly permitted, allowed, or created the dangerous condition, had actual or constructive knowledge of the dangerous condition, and failed to exercise reasonable care regarding the object's presence in the aisle.  (*Id.* at 17-18).  As a result of the fall, the Plaintiff alleges that she sustained several injuries and losses, including lost wages; medical expenses; mental and emotional damages; physical pain; disfigurement; gait abnormality; subrogation costs; and physical injuries, including but not limited to injuries to her left knee that resulted in a total knee arthoplasty.  (*Id.* at 18).  The Plaintiff seeks, *inter alia*, a judgment against the Defendants compensating her for "her costs of suit" and "all general, special, incidental, consequential and exemplary damages incurred or to be incurred by the Plaintiff as the direct and proximate result of the acts and omissions of the Defendants."  (*Id.* at 23).

The Defendants filed their Notice of Removal (Doc. 1) in this Court on February 19, 2015 asserting that this Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.  The Defendants argue that diversity jurisdiction exists because the properly joined parties are diverse and the amount in controversy exceeds $75,000. (Doc. 1 at 2).  On April 27, 2015, the Plaintiff filed the Motion to Amend and Remand requesting the Court to (a) allow her to add Pamela Pippen ("Pippen"), the acting

2

manager of the Thomasville Store on the date of the Plaintiff's alleged accident, as a defendant in this action and (b) remand this action to the Circuit Court.  According to the Plaintiff, despite several unsuccessful attempts to ascertain the names and identities of the store manager and employees at the Thomasville Store who were allegedly responsible for the Plaintiff's injury, she did not become aware of Pippen's identity until receiving the Defendants' initial disclosures on April 20, 2015.  (Doc. 13 at 2-3).  In the event the Court allows Pippen, who like the Plaintiff, is an Alabama resident, to be added as a defendant in this action, the Court will need to remand this action to the Circuit Court because its diversity jurisdiction would be destroyed.  In support of the Motion to Amend and Remand, the Plaintiff submitted, *inter alia*, an April 27, 2015 Declaration of Bernice P. Johnson (the "Declaration") (Doc. 13 at 49-50).

On May 26, 2015, the Defendants filed the Response to the Motion to Amend and Remand requesting the Court to deny the Plaintiff's Motion to Amend and Remand because the Plaintiff is only attempting to add Pippen as a defendant to destroy the Court's diversity jurisdiction; the Plaintiff knew, or could have easily obtained Pippen's identity prior to the initiation of this action; the Plaintiff would not be injured if her motion is denied; and the balance of equities favor allowing Defendants to select the federal forum to litigate this matter.  The Defendants contemporaneously filed the Motion to Strike requesting the Court to strike the Declaration because it is not signed by the Plaintiff, is not sworn before a notary, and does not comply with the requirements of 28 U.S.C. § 1746 ("§ 1746"), which pertains to unsworn declarations. On June 9, 2015, the Plaintiff filed the Response to the Motion to Strike and provided an amended Declaration (the "Amended Declaration") (Doc. 19 at 4-5) that she contends cures any errors contained in the Declaration.  Thus, the Plaintiff requests the Court to deny the Motion to Strike as moot.

## Discussion

Prior to discussing the Motion to Amend and Remand, the undersigned will address the Motion to Strike.  The Defendants filed the Motion to Strike requesting the Court to strike the Plaintiff's Declaration because it is not signed by the Plaintiff in her handwriting, it is not sworn before a notary, and it does not comply with the requirements of § 1746 regarding unsworn declarations.  After the Defendants filed their Motion to Strike, the Plaintiff responded and provided the Court with the Amended Declaration, which is signed by the Plaintiff in her handwriting and contains the requisite language for unsworn declarations under § 1746.  *See* 28 U.S.C. § 1746 ("Wherever . . . any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . ., such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).'").  Further, the Defendants did not file a reply to the Plaintiffs response or the Amended Declaration, nor did the Defendants renew their Motion to Strike as to the Amended Declaration.  For these reasons, the undersigned recommends that the Motion to Strike be denied as moot.

Turning to the Motion to Amend and Remand, Rule 15(a) of the Federal Rules of Civil Procedure provides that a court  "should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a).  However, when a plaintiff, post-removal, seeks to amend their complaint to join a non-diverse defendant who would destroy a court's subject-matter jurisdiction, the court should examine the proposed

amendment under the standard provided in 28 U.S.C. § 1447(e) ("§ 1447(e)").  *Thomas v. Eight Mile Nursing & Rehab Center LLC*, No. 15-00051-KD-N, 2015 WL 1778359, at *1 (Apr. 20, 2015); *Gayle v. Acceptance Ins. Agency of Tenn*, No. 14-466-CG-B, 2014 WL 6872921, at *2 (Dec. 3, 2014); *Sharp v. Wal-Mart Stores, Inc.*, No. 06-0817-WS-C, 2007 WL 215644, at *2 (S.D. Ala. Jan. 25, 2007).   Under § 1447(e), it is the court's discretion whether to grant or deny such a post-removal motion to amend a complaint.  28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to State court."); *see Gayle*, 2014 WL 6872921, at *2; *Sharp*, 2007 WL 215644, at *2.   This discretion does not imply that that such amendments should be granted as a matter of course.  Instead, a court "when faced with an amended pleading naming a new nondiverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment."  *Sharp*, 2007 WL 215644, at *2 (quoting *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)).

When applying § 1447(e) to determine whether to allow an amendment that destroys diversity jurisdiction, courts have considered the following factors first identified by the court in *Hensgens*, 833 F.2d at 1182: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in seeking amendment; (3) whether the plaintiff would be significantly injured if the amendment were not permitted; and (4) any other factors weighing on the equities.  *See Thomas*, 2015 WL 1778359, at *2; *United Prop. & Cas. Ins. Co. V. A & E Factory, LLC*, No. 6:14-cv-1987-Orl-41TBS, 2015 WL 328223, at *4 (M.D. Fla. Jan. 26, 2015); *Turner v. Wal-Mart Stores E., L.P.*, No. 7:11-CV-181, 2012 WL 6048949, at *2 (M.D. Ga. Dec. 5, 2012). The undersigned will now discuss the four "*Hensgens* Factors" in turn.

I.     **The Extent to Which the Purpose of the Plaintiff's Amendment is to Defeat Federal Jurisdiction**

The Plaintiff argues that her intent in amending her complaint is to hold accountable all who are liable for her injuries, which is evidenced by both her designation of the Thomasville Store manager and employees as fictitious defendants in her First Amended Complaint and her attempts to ascertain their identities through discovery requests and communication with Defendants' counsel throughout the duration of this case.

The Defendants contrarily argue that the Plaintiff's attempt to add Pippen as a defendant in this case is purely for the purpose of defeating diversity jurisdiction. Specifically, the Defendants argue that this intent is apparent because of the Plaintiff's failure to add Pippen despite knowing or having ample time to obtain the identity of Pippen prior to removal. The Defendants claim that if the Plaintiff truly wanted to learn Pippen's identity prior to removal, her counsel could have followed up on any tardy discovery responses, filed a motion to compel, or researched public records for a past complaint filed against Dirt Cheap, LLC in a separate case that implied Pippen's identity as the Thomasville Store manager.  The Defendants also argue the Plaintiff's simultaneous requests for the Court to grant her leave to amend her complaint and to remand this suit to Circuit Court suggests the intent of the amendment is to defeat this Court's jurisdiction. As for the fictitious defendants identified in the Plaintiff's First Amended Complaint, the Defendants contend the pleading is "nothing more than standard protocol" and does not evidence an effort to identify and name the Thomasville Store manager as an additional defendant.  (*See* Doc. 15 at 6).

The undersigned disagrees with the Defendants' characterization of the First Amended Complaint.  The Plaintiff specifically identified "entities and/or persons who

or which negligently and/or wantonly supervised any agents, servants, and/or employees where such supervision was directly or indirectly related to the Plaintiff's injuries" and "entities and/or persons who or which were responsible for the management and/or maintenance of Dirt Cheap, LLC, Hudson's Dirt Cheap, Inc. and "Dirt Cheap" located in Thomasville, Alabama on or about June 25, 2012, which injured the Plaintiff."  (Doc. 1-1 at 16).  The undersigned finds that the Plaintiff's proposed amendment is a manifestation of what the Plaintiff's intent has been since the inception of this lawsuit: to sue not only the entities that operated the Thomasville Store, but also the manager and/or supervisor whose responsibility it was to ensure that the store was clear of hidden hazards.  *See Sharp*, 2007 WL 215644, at *3 (finding that a plaintiff's proposed amendment adding a new defendant who was responsible for stacking merchandise that caused the plaintiff's injuries was merely effectuating the plaintiff's intent, which was evident from the plaintiff's initial complaint, which named certain unknown fictitious defendants who were responsible for securing the merchandise in an unsafe manner).

The undersigned also disagrees with the Defendants argument that the Plaintiff knew or had ample time to obtain the identity of Pippen prior to the removal of this case.  The Defendants cite two cases wherein courts found the purpose of a plaintiff's proposed amended complaint was to defeat diversity jurisdiction because the plaintiff knew or should have ascertained the identity of the new defendant at an earlier time: *Smith v. White Consolidated Industries, Inc.*, 229 F. Supp. 2d 1275, 1282 (N.D. Ala. 2002) and *Selman v. Wyeth-Ayerst Labs. (In re Norplant Contraceptive Products Liability Litigation)*, 898 F. Supp. 429 (E.D. Tex. 1995).  Both of these cases, however, are distinguishable from the matter currently before the Court.  In *Smith*, there was undisputed evidence that the plaintiff knew the identity of the new defendant at least 10 months prior to

filing his initial complaint and 20 months prior to filing the proposed amendment. *Smith*, 229 F. Supp. at 1280.  In addition, the plaintiff, who was bringing a product liability suit, had the opportunity to ascertain the identity of the new defendant, a department manager at the plaintiff's employer, through discovery that was completed in a prior workers' compensation lawsuit.  *Id.*  In *Norplant*, the plaintiffs, who were bringing a product liability action against the manufacturer of contraceptive implants, attempted to add a non-diverse doctor who inserted one of the implants into one of the plaintiffs. 898 F. Supp. at 430.  The court held that the plaintiffs had to have known the identity of the doctor and that they could have easily included him as a defendant when they originally filed their complaint in state court.  *Id.* at 432.

Here, unlike the scenario in *Smith*, it is disputed whether the Plaintiff knew Pippen's identity prior to the Plaintiff filing the First Amended Complaint or the Defendants filing of the Notice of Removal.  The Defendants claim that the Plaintiff knew Pippen's identity on the date of her alleged accident.  To this end, they provided a May 21, 2015 affidavit from Pippen (the "Pippen Affidavit") (Doc. 15-2) providing that on the date of the Plaintiff's alleged accident, Pippen was wearing an employee nametag on her shirt and Pippen and shortly after the accident, the Plaintiff discussed Pippen's twin brothers-in-law, who the Plaintiff referred to as the "Pippen twins." (Doc. 15-2 at 1).  The Plaintiff, however, disputes this in the Supplemental Declaration of Bernice P. Johnson (the "Supplemental Declaration") (Doc. 18 at 13), in which she states that on the day of the alleged incident, she did not know Pippen, learn Pippen's name or position, see Pippen's nametag, or converse with Pippen about her brothers-in-law.  Instead, the Plaintiff states that after the incident, she spoke for approximately five to ten minutes with an African-American, female employee who took her statement and contact information but did not give the Plaintiff her name or job title.  (Doc. 18 at 13).

This scenario is also different from *Norplant* where the plaintiffs were attempting to add a doctor who performed surgery on the one of the plaintiffs.  Unlike the scenario in *Norplant*, it is reasonable to believe that here, the Plaintiff did not see Pippen's nametag while she was "distressed, embarrassed and in extreme pain" after her alleged accident. (*See Id.*).

In addition, the Plaintiff, unlike the plaintiff in *Smith*, did not have the opportunity to ascertain the identity of Pippen through discovery prior to the removal of the case to this Court.  The Plaintiff initially filed her complaint on June 23, 2014.  On December 15, 2014, the Plaintiff sent discovery requests (Doc. 13 at 52-64) to the Defendants, including requests or admissions, interrogatories, and requests for production of documents.  Of these discovery requests, three separate interrogatories (nos. 3, 4, and 31) and one request for production (no. 21) specifically requested information and documents regarding witnesses and the job titles, names, telephone numbers, and addresses of the Defendants' employees who were working at the Thomasville Store on the date of the Plaintiff's alleged accident. (Doc. 13 at 56 & 60).  In addition, request for production number 3 requested "[a]ny and all accident reports pertaining to the incident in question."  (Doc. 13 at 61).  On January 14, 2015, the Defendants responded to Plaintiff's requests for admissions, but did not respond to the interrogatories or requests for production.  Both sets of counsel communicated via email on January 21, 2015 and agreed to a thirty (30)-day extension for both sides to respond to the remaining discovery requests.  (Doc. 15-1).  Counsel for the Defendants stated that he hoped to have the remaining discovery responses completed "within the next 7-10 days" to which Plaintiff's Counsel responded, "[n]o problem at all as I am in no immediate rush since we are in the beginning stages of discovery." (*Id.* at 1).  The

Defendants then removed the case to this Court on February 19, 2015 prior to responding to the remaining discovery requests.

Therefore, contrary to the situation in *Smith*, the Plaintiff did not have the opportunity to ascertain Pippen's identity through discovery prior to the removal of the case. Instead, the reason the Plaintiff did not have Pippen's information prior to removal is because the Defendants removed the case before disclosing that information to the Plaintiff through discovery. The Defendants argue that if the Plaintiff's counsel urgently needed Pippen's personal information, he could have followed up on any tardy discovery responses or filed a motion to compel, but the undersigned finds this argument disingenuous as the Defendants are asking the Court to penalize the Plaintiff for the Defendants' failure to timely respond to discovery requests.

Furthermore, the undersigned gives credence to the Plaintiff's statement in the Amended Declaration that after her accident, she contacted the Thomasville Store numerous occasions requesting a copy of the incident report prepared after her alleged accident and the names of the store manager and any other employees who were involved in the matter. (Doc. 18 at 10). According to the Plaintiff, she was informed that they could not provide any of this information, and she was instead referred to the store's district manager. (*Id.*). While the Defendants did provide the Pippen Affidavit and a May 6, 2015 Declaration of Laura Colavita (the "Colavita Declaration") (Doc. 15-3) that was prepared by Laura Colavita ("Colavita"), a specialist with the Defendants' insurance broker, neither of these documents directly refute the Plaintiff's contention that she repeatedly tried to obtain Pippen's information from the Thomasville Store. Instead, the Pippen Affidavit only provides that Pippen has "no reason to believe that [the Plaintiff] would not have been provided that information had she or a friend or relative simply come to the store or called." (Doc. 15-2 at 2). Similarly, the Colavita

Declaration only provides that the Plaintiff did not request information pertaining to the Thomasville Store manager during her one telephone conversation with Colavita on June 19, 2013. (Doc. 15-3 at 1).

The undersigned also rejects the Defendants arguments that the Plaintiff's ulterior intent behind attempting to amend her First amended Complaint is evidenced by (a) her failure to locate a prior complaint filed against Dirt Cheap, LLC in an unrelated lawsuit, assume the information contained therein was accurate, and infer from said contents that Pippen was the Thomasville Store manager and (b) her decision to combine her motion to amend and her motion to remand in a singular document.[1] Instead, for the reasons stated above, the record as a whole suggests that the Plaintiff's amendment was for the purpose of suing the appropriate parties responsible for her alleged injuries. Therefore, the undersigned finds that the first *Hensgens* Factor weighs in favor of the allowing the Plaintiff to amend her First Amended Complaint.

---

[1] For their argument that the Plaintiff's combined Motion to Amend and Remand indicates that the Plaintiff seeks to add Pippen as a defendant in this action only to defeat diversity jurisdiction, they cite *Seropian v. Wachovia Bank*, No. 10-80397-CIV, 2010 WL 2822195, at *1 (S.D. Fla. July 16, 2010). In *Seropian*, the Court found that the plaintiffs' motion to amend and motion to remand suggested that that the amendment was designed to defeat jurisdiction because they were contained in the same filing. 2010 WL 2822195, at *4. However, this finding was not the sole reason the Court found that the plaintiffs' intent in amending their complaint was to defeat the federal court's subject matter jurisdiction as the plaintiffs had admitted that they knew the new defendant's identity prior to filing their initial complaint in state court. *See Id.* at *3-4. Further, the court found that the plaintiffs had not provided any reasonable explanation as to why they did not originally name the new defendant as a party. As detailed throughout this Report and Recommendation, the undersigned finds that the Plaintiff has provided a reasonable explanation as to why she did not include Pippen prior to the current Motion to Amend and Remand. Therefore, *Seropian* is distinguishable from the matter currently before the Court, and the undersigned finds that under these fact, the Plaintiff's combined motion to amend and to remand, by itself, does not suggest that the proposed amendment is for the sole purpose to defeat diversity jurisdiction.

**II.      Whether Plaintiff has been Dilatory in Seeking Amendment**

The Plaintiff argues that she was not dilatory in seeking amendment of the First Amended Complaint. As previously discussed, she states that she contacted the Thomasville Store on numerous occasions after her accident to obtain a copy of the incident report pertaining to her accident and the identities of the store manager and the employees involved in her accident, but the Plaintiff was told that it was the store's policy not to provide copies of incident reports or information regarding employees. (Doc. 18 at 10-11).  The Plaintiff then states that the Thomasville Store referred her to Dirt Cheap, LLC's district manager, who then referred the Platintiff to Colavita, who, in turn, referred the Plaintiff to the store's insurance adjuster, who never returned any of the Plaintiff's telephone calls.  (*Id.*).

As discussed in more detail under the first *Hensgens* Factor, the Plaintiff sent the discovery requests on December 14, 2015, but the Defendants removed the case to this Court before responding to any requests that referred to the identity of the Thomasville Store manager or employees on the date of the alleged incident.  On March 27, 2015, a little more than a month after the case was removed, the parties' counsel conducted their Rule 26(f) conference via telephone. At the conference, the parties' counsel discussed the identities of the Thomasville Store manager and other employees, and counsel for the Defendants said that information would be included in the Defendant's initial disclosures.   The Plaintiff received the Initial Disclosures of Defendants (the "Defendants Initial Disclosures") (Doc. 13 at 69-71) on April 20, 2015.  The Defendants Initial Disclosures included, *inter alia*, Pippen's current work telephone number and her job title at the time of the Plaintiff's alleged incident, but they did not include Pippen's personal address or telephone numbers.   Seven (7) days later, the Plaintiff filed the

Motion to Amend and Remand.  According to the Plaintiff, she spent those seven (7) days conducting an independent investigation to determine Pippen's home address and residency.

Similar to their argument under the first factor, the Defendants contend that the Plaintiff was dilatory in attempting to amend the First Amended Complaint.  They argue that the Plaintiff was aware of Pippen's identity minutes after her accident, and even if she was not, she could have easily ascertained Pippen's identity through several methods in the nearly two (2) years between the Plaintiff's accident and the filing of her initial complaint.  In support of these contentions, the Defendants provided the Pippen Affidavit, the Colavita Declaration, and a May 1, 2014 letter from the Plaintiff's counsel to the Defendants' insurance carrier (the "Plaintiff Counsel's Letter") (Doc. 15-4).

In full, the Pippen Affidavit provides that she is currently the manager of a Dirt Cheap, LLC store located in Montgomery, Alabama.  (Doc. 15-2 at 1).  On the date of the Plaintiff's alleged accident, Pippen, who was the acting manager of the Thomasville Store, states she was wearing an employee nametag on her shirt that listed her name and job title.  (*Id.*).  Pippen also says that shortly after the Plaintiff's accident, the Plaintiff told Pippen that she knew Pippen's twin brothers-in-law, who the Plaintiff referred to as the "Pippen twins."  (*Id.*).  Pippen explains that after the incident, she gave the Plaintiff the contact information for an employee in the Dirt Cheap, LLC corporate office but, per company policy, did not give the Plaintiff a copy of the incident report she prepared.  (*Id.*).  Finally, Pippen states that she never declined to give the Plaintiff her name, and the Plaintiff could have obtained it by asking Pippen after the incident, visiting or contacting the Thomasville Store after the incident, or visiting Dirt Cheap, LLC's website or social media page.  (*Id.* at 2).

In the Colavita Declaration, Colavita states that the Plaintiff contacted her on June 19, 2013 requesting information regarding the insurance adjuster assigned to the claim arising from the Plaintiff's alleged accident, which Colavita provided.  (Doc. 15-3 at 1).  According to Colavita, the Plaintiff never requested any information regarding the identity of the store manager at the Thomasville Store on the date of her alleged accident.  (*Id.*).

In the Plaintiff Counsel's Letter, the counsel for the Plaintiff advises the Defendants' insurance carrier that he represents the Plaintiff in connection with the alleged accident at the Thomasville Store and requests the insurance carrier to (a) forward all communication regarding the incident to him and (b) provide him with a copy of any statement the carrier took regarding the accident.  (Doc. 15-4 at 1).  The Defendants argue that if the Plaintiff desperately needed Pippen's identity and was being thwarted by the Defendants at every turn, Plaintiff's counsel would have requested information regarding Pippen's identity in this letter.

Under the previous factor, the undersigned discussed and analyzed the Plaintiff's attempts to obtain Pippen's identity prior to removal.  For the reasons already stated, the undersigned finds that the Plaintiff took reasonable, not dilatory action to secure Pippen's information prior to the removal of the case.  It is undisputed that the Plaintiff contacted the Thomasville Store multiple times after the alleged incident in an attempt to ascertain Pippen's identity.  (*See* Doc. 18 at 10).  The Plaintiff sent discovery requests on December 14, 2015, but the Defendants removed the case prior to responding to any requests regarding the identity of the Thomasville Store manager on the date of the alleged incident.

The undersigned also finds the Plaintiff's actions after the case was removed but before she filed the Motion to Amend and Remand were not dilatory.  Plaintiff's

counsel requested the information regarding the identity of the Thomasville Store manager and employees at the parties' Rule 26(f) conference on March 27, 2015, but did not obtain Pippen's information until April 20, 2015, when the Plaintiff received the Defendants Initial Disclosures. The Plaintiff then determined Pippen's residency and filed the Motion to Amend and Remand seven (7) days later.  Upon these facts, the undersigned finds that it is clear that the Plaintiff has not been dilatory in her attempt to amend her complaint.[2]  Therefore, the second *Hensgens* Factor weighs in favor of allowing the Plaintiff to amend the First Amended Complaint.

## III. Whether the Plaintiff Would be Significantly Injured if the Amendment Were Not Permitted

According to the Plaintiff, she would be significantly injured if the Court denied her Motion to Amend and Remand in three (3) ways: (1) the Plaintiff would not be able to obtain full relief in this suit if Pippen's interests and liability are adverse to those of the Defendants; (2) the Plaintiff would not be able to file a parallel action against Pippen

---

[2]    These facts also distinguish this matter from the two cases the Defendants cite in favor of their argument under this factor: *Smith*, 229 F. Supp. at 1275 and *Sexton v. G & K Services, Inc.*, 51 F. Supp. 2d 1311 (M.D. Ala. 1999).  As the undersigned previously stated, in *Smith* there was undisputed evidence that the plaintiff knew the identity of the new defendant at least 10 months before filing his initial complaint and 20 months before filing the proposed amendment. *Smith*, 229 F. Supp. at 1280. In addition, the plaintiff, who was bringing a product liability suit, had the opportunity to ascertain the identity of the new defendant, a department manager at the plaintiff's employer, through discovery that was completed in a prior workers' compensation lawsuit.  *Id.*  In *Sexton*, the plaintiff could have ascertained the new defendant's identity by just looking at the contract in his possession that was at issue in the case. 51 F. Supp. 2d at 1314. As the undersigned discussed under the first *Hensgens* Factor, the instant matter is distinguished from *Smith* because (a) there is a dispute as to whether the Plaintiff knew Pippen's identity prior to her filing the First Amended Complaint or the Defendants filing of the Notice of Removal and (b) the Plaintiff did not have the opportunity to ascertain the identity of Pippen through discovery prior to the removal of the case to this Court.  This case also is distinguishable because here, the Plaintiff, unlike the plaintiff from *Sexton*, did not possess any documents that listed Pippen as the Thomasville Store manager.  In fact, Pippen concedes that per company policy, she did not provide the Plaintiff with the incident report she prepared after the Plaintiff's alleged accident.  (*See* Doc. 15-2 at 1).

in state court because the two-year statute of limitations has passed; and (3) the Plaintiff would have difficulty obtaining discovery from Pippen as a non-party, especially if she stops working for the Defendants.

In response to these contentions, the Defendants argue that (1) they hereby admit and stipulate that Pippen was acting within the line and scope of her employment with the Defendants and, thus, the Defendants shall be responsible for any liability attributable to Pippen and shall satisfy any judgment resulting therefrom; (2) the Eleventh Circuit Court of Appeals has held that the expiration of the statute of limitations for state court claims does not alone show sufficient injury to warrant an amendment of a complaint under these circumstances; and (3) the Plaintiff will have no difficulty in obtaining necessary discovery from Pippen if she is not made a defendant in this case because she has been employed with the Defendants for more than thirteen (13) years and is currently employed as the Defendants' manager at a store in Montgomery Alabama.

The undersigned finds that the Plaintiff's second and third arguments sufficiently weigh the third *Hensgens* Factor in the Plaintiff's favor. Regarding the Plaintiff's second argument–she will be injured if the Court denies the Motion to Amend and Remand because the two-year statute of limitations has passed and she will be unable to file a parallel action against Pippen in state court–the Defendants argue that the Eleventh Circuit has held that the expiration of the statute of limitations for a state court claim does not alone show sufficient injury to warrant an amendment of a complaint under these circumstances. The undersigned disagrees. The Defendants cite *Smith*, 229 F. Supp. 2d at 1275, a case where the court, in analyzing whether denying a proposed amendment to add a non-diverse defendant would significantly injure the plaintiff, held that the "mere fact that the statute of limitations may now bar plaintiff's

claim against [the new defendant] does not justify allowing the amendment." *Smith*, 229 F. Supp. 2d at 1282. While the *Smith* court does discuss the Eleventh Circuit's opinion in *Ingram v. CSX Transportation INC.*, 146 F.3d 858 (11th Cir. 1998), the *Smith* court does not state, as the Defendants suggest, that the Eleventh Circuit held that the expiration of the statute of the limitations for state court claims does not alone show sufficient prejudice to warrant amendment. Moreover, a reading of *Ingram* reveals that the Eleventh Circuit, when deciding whether to dismiss one of the defendants from the suit, actually stated that the plaintiff's argument that she would be prejudiced in light of the expired statute of limitations on her claim against the defendant in question "might be persuasive" in a different case, but it was not going to reward the plaintiff in the instant matter because she "waited until her oral argument presentation on appeal-long after the district court's adverse ruling on the merits of her case" before raising the argument. *Ingram*, 146 F.3d at 862-63.

Although the *Smith* court found that the statute of limitations issue did not constitute an injury significant enough to weigh this factor in favor of the plaintiff in that case, here, the undersigned agrees with the courts that have recognized that the expiration of the statute of limitations for a plaintiff's state court claim may constitute an injury significant to weigh the third *Hensgens* Factor in the plaintiff's favor. *See Fletcher v. Cooper Tire & Rubber Co.*, No. 2:13CV156-MHT, 2013 WL 3854491, at *3 (M.D. Ala. July 24, 2013); *Hirschman v. Wachovia Bank, N.A.*, No. DKC 11-1945, 2011 WL 6047091, at *4 & n.4 (D.Md. Dec. 5, 2011); *Miller v. Absolute Coatings, Inc.*, No. 97-2426, 1997 WL 666111, at *5 (E.D. La. Oct. 23, 1997). Accordingly, the undersigned finds that the expiration of the statute of limitations for a state court lawsuit against Pippen weighs this factor in the Plaintiff's favor. The undersigned also finds the Plaintiff's third argument persuasive. If the Court were to deny the Motion to Amend and

Remand, the Plaintiff might encounter greater difficulty obtaining discovery from Pippen, especially as a third-party witness if she stops working for the Defendants. *See Sharp*, 2007 WL 215644, at *4 ("[S]hould [the proposed new defendants] leave their employment . . . during the pendency of these proceedings, plaintiff may encounter substantially greater obstacles in securing discovery from them as third-party witnesses than she would if they were named defendants.").

As for the Plaintiff's argument that she would not be able to obtain full relief in this suit if Pippen's interests and liability are adverse to those of the Defendants, the Defendants argue that this is not a valid concern because they admit and stipulate in their Response to the Motion to Amend and Remand that at "all times material to the allegations in the Complaint, [Pippen] was acting within the line and scope of her employment with the Defendant and, accordingly, that Defendants shall be responsible for any liability attributable to Pippen's actions or inactions in this case and shall satisfy any judgment resulting therefrom." (Doc. 15 at 10). Assuming that the Defendants' argument is true and that an agency dispute does not arise during the pendency of this case causing the interests of Pippen and the Defendants to diverge, the undersigned finds that the combination of aforementioned statute of limitations and potential discovery difficulties constitute a substantial risk of injury to the Plaintiff if the Motion to Amend and Remand is denied. Therefore, the third *Hensgens* Factor weighs slightly in favor of the Plaintiff.

## IV.   Any Other Factors Weighing on the Equities

Finally, the Plaintiff argues that the balance of the equities favors allowing her to amend her complaint because (a) she has sought to sue the Defendants, their store manager, and their employees since the initiation of this suit and (b) the Defendants

should not be allowed to profit from their own misleading an foot-dragging conduct by giving them a federal forum that they would not be entitled to absent such conduct. The Plaintiff contends that the Defendants misled the Plaintiff by failing to provide Pippen's information while simultaneously preparing for removing the action to federal court.  To the contrary, the Defendants contend that the balance of equities weighs in favor of not allowing the Plaintiff's amendment in light of the policy giving diverse defendants the right to choose between a state or federal forum.  The Defendants also emphasize efficiency and judicial economy weight in its favor because the Plaintiff will not have the burden of litigating simultaneous suits due to the expiration of the limitations period in state court.

While the undersigned does appreciate the right of a diverse defendant to choose a federal forum, the undersigned finds that the balance of equities favors allowing the Plaintiff to amend the First Amended Complaint. As detailed above, the undersigned finds that the Plaintiff has intended since the inception of this case to sue not only the entities that operated the Thomasville Store, but also the manager and/or supervisor whose responsibility it was to ensure that the store was clear of hidden hazards. Because of the purported expiration of limitations period for the Plaintiff's claims against Pippen in state court, fairness suggests allowing the Plaintiff to add Pippen so that a court can determine the respective liabilities of all parties the Plaintiff has intended sue since she filed her First Amended Complaint.  In addition, while the undersigned disagrees with the Plaintiff's suggestion that the Defendants' actions throughout this case were egregious or intentionally misleading, the undersigned does find that a significant amount of the delay that occurred in the Plaintiff's discovery of Pippen's identity and the Plaintiff's subsequent attempt to amend her complaint is attributable to the Defendants' actions through the state court discovery and the

removal process.  For this reason, it would not be equitable to punish the Plaintiff for delays primarily attributable to the Defendants.  Consequently, the undersigned finds that the fourth *Hensgens* Factor weighs in favor of allowing the Plaintiff to amend the First Amended Complaint.

## Conclusion

The Magistrate Judge finds that the Motion to Strike should be denied as moot because the Plaintiff submitted the Amended Declaration, which is signed by the Plaintiff in her handwriting and contains the requisite language for unsworn declarations under § 1746, and the Defendants did not respond to the Amended Declaration or renew their Motion to Strike as to the Amended Declaration.  As for the Motion to Amend and Remand, the undersigned concludes that the four *Hensgens* Factors weigh in favor of allowing the Plaintiff to amend the First Amended Complaint to add Pippen as a defendant.  Therefore, after careful consideration of the pleadings, and for the reasons set forth above, it is hereby **RECOMMENDED** that the Motion to Strike be **DENIED AS MOOT**, the Motion to Amend and Remand be **GRANTED**, and this matter be **REMANDED** to the Circuit Court for further proceedings.

## Notice of Right to File Objections

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district

20

court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 13th day of November 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**